UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAPERS, INC.,

    Plaintiff,

v.                                           Case No. 14-CV-12290

SMTS, LCC d/b/a Tuff zone, TRARMS, INC.,
and SUN OPTICS USA,

    Defendants.
                                        /

**OPINION AND ORDER DENYING IN PART, AND
GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS**

Pending before the court are a Joint Motion to Dismiss, filed by Defendants SMTC, LLC ("SMTC") and Trarms, Inc. ("Trarms") (Dkt. # 15) and an Amended Motion to Dismiss filed by Defendant Sun Optics USA ("Sun Optics") (Dkt. # 20). Having reviewed the briefs, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant the motions in part and deny the motions in part.

**I. BACKGROUND**

Plaintiff Leapers, Inc. ("Leapers") is "in the business of supplying shooting, hunting and outdoor gear." (Compl. ¶ 15, Dkt. # 1.) Leapers asserts that it "owns common law trade dress rights in the distinctive scalloping design applied to the adjustment knobs and bells of its rifle scopes and/or sights" (*Id.* ¶ 17) and that it "is the owner of Michigan state registration number M12557" for the marks." (*Id.* ¶ 18.) The Complaint alleges that the marks are "distinctive and non-functional." (*Id.* ¶ 20.)

According to Leapers, its "marks have become distinctive and famous and are widely recognized by the general consuming public of the United States as a designation for the source of the goods of Leapers." (*Id.* ¶ 24.) Leapers alleges that "Defendants have manufactured, produced, advertised and/or sold products bearing" its marks without permission. (*Id.* ¶¶ 24–25.)

On June 10, 2014 Leapers filed a complaint bringing seven causes of action: (I) False Designation of Origin or Sponsorship Under 15 U.S.C. § 1125(a); (II) Trade Dress Infringement Under 15 U.S.C. § 1125(a); (III) Trademark Dilution Under 15 U.S.C. § 1125(c); (IV) Common Law Trademark Infringement; (V) Unfair Competition; (VI) Infringement Under M.C.L.A 429.42; and (VII) Violation of the Michigan Consumer Protection Act. Defendants timely filed the instant motions seeking to dismiss the complaint for failure to state a claim.

## II. STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Tackett v. M&G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 466 (6th Cir. 2000)). Although a heightened fact pleading of specifics is not required, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly*, 550 U.S. at 555 (citing Fed. R. Civ. P. 8(a)). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) *abrogated on other grounds by Twombly*, 550 U.S. 544. In application, a "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). Therefore, "to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's well-pled factual allegations. *Twombly*, 550 U.S. at 556.

### III. DISCUSSION

**A. False Designation of Origin**

A plaintiff pursuing a claim under Section 43(a) of the Lanham Act for false designation of origin (15 U.S.C. § 1125(a)) must establish that "(1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). Defendants both proceed to cite the standard, articulated in *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999), for false or misleading *advertising*. *See* SMTC Br. at 4-5 (Dkt. # 15); Sun Optics Br. at 3-4 (Dkt. # 20). While Defendants accurately state the law for a false advertising claim, it is not helpful in considering Plaintiff's false designation of origin claim. The Complaint adequately alleges the substantial effect Defendants' alleged infringement has on interstate commerce and that the assertedly "distinctive scalloping" is likely to create confusion in the public. Consequently the motions to dismiss Count I must be denied.

### B. Trade Dress Infringement

Section 43(a) of the Lanham Act protects unregistered "trade dress." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). At issue is whether Leapers' mark is protectable. In order to state a claim for trade dress infringement, "a plaintiff must prove that its allegedly infringed product design (1) is nonfunctional, (2) has acquired secondary meaning, and (3) is confusingly similar to the allegedly infringing product design." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 503 (6th Cir. 2013). These standards also apply to Counts IV, V, VI, and VII. *See Homeowners Group, Inc. v.*

4

*Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1005 n.1 (6th Cir. 1991). The third element is not at issue.

Defendants argue that the Complaint insufficiently describes Leapers' marks. Defendants rely heavily on *Mike Vaughn Custom Sports, Inc. v. Piku*, No. 12-13083, 2014 WL 1673827 (E.D. Mich. Apr. 25, 2014). In *Mike Vaughn*, the court dismissed the plaintiff's Lanham Act claims for failing to specifically allege features composing the trade dress. *Id.* at *6. The plaintiff had alleged in a conclusory manner that "it developed a 'signature trade dress feature' for its 'goalie pads,' 'goalie catch glove,' and 'other of its products' and that these products feature 'non-functional elements.'" *Id.* at *7. The plaintiff "attached photographs comparing its products and the defendants' allegedly infringing products." *Id.* at *8.

In dismissing the trade dress infringement claim, the court explained that it could not "distill from the images what the plaintiff claims as protected trade dress." *Id.* In contrast with *Mike Vaughn*, Leapers has described its marks as a "distinctive scalloping design applied to the adjustment knobs and bells of its rifle scopes and/or sights." Compl. ¶ 17. Leapers uses those words to describes its mark in its trademark registration with the state of Michigan. The complaint in *Mike Vaughn* contained no such description. The "scalloping" is identifiable in the photographs attached to the complaint in this action, unlike the *Mike Vaughn* photographs, which left the court to speculate as to the distinctive elements. Leapers has identified its trade dress.

Defendants further argue that the grooves in the knobs, dials, and bell of a rifle scope are provided to facilitate gripping, for example by gloved hands, and are thus functional, precluding the finding of a protectable mark: "It is obvious that the grooves in

5

the knobs and bell (the eyepiece) permit hunters to grip and turn them effectively while wearing gloves during hunting . . . ." Doc # 16, Pg ID 167.

Defendants acknowledge that "[f]unctionality is a factual determination." *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1246 (6th Cir. 1991). Nevertheless, Defendants claim that Leapers did not plead non-functionality with sufficient particularity. It is true that Leapers ultimately will have "the burden of proving that the matter sought to be protected is not functional," 15 U.S.C. § 1125(a)(3). Although the court will be keen to learn how Plaintiff's "scalloping" design is no more than decoration, that it is neither in any way "essential to the use or purpose of the article," nor a feature that significantly "affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10 (1982), at the pleadings stage a simple, and illustrated, assertion of non-functionality shall be sufficient.

*Mike Vaughn* is distinguishable in this regard. The court noted that the plaintiff's own "description of the graphics describe the design as functional, concluding that the plaintiff designed the graphics to provide 'increased durability' and 'superior performance,'" thus undermining the bare allegation of non-functionality. *Mike Vaughn*, 2014 WL 1673827 at *8.

Finally, defendants argue that Leapers' marks have not established secondary meaning. "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Groeneveld Transport Efficiency, Inc. v. Lubecore Intern., Inc.*, 730 F.3d 494, 528 (6th Cir. 2013) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.11 (1982). The

Sixth Circuit employs a seven factor test to determine whether a trade dress has acquired secondary meaning: 1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying.  *Id.* at 528 (*quoting General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 418 (6th Cir. 2006)). The Complaint discusses Leapers' efforts over the past twenty years in advertising and otherwise developing its marks.  (Compl. ¶¶ 15, 22). This is sufficient to state a claim and allow discovery as to this fact-specific inquiry.

### C. Trademark Dilution

Trade-dress dilution is actionable under § 43(c) of the Lanham Act which allows owners of famous marks to obtain injunctions against infringers.  5 U.S.C. § 1125(c)(1). For the purposes of the statute,

> a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>
> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

"Under a dilution theory, a plaintiff's trade dress is protected against the kind of

7

imitation that cheapens the genuine product by flooding the market with a mass of low-quality replicas, even if consumers do not ultimately confuse the fake with the real thing." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 519 (6th Cir. 2013).

In evaluating fame, courts have deemed famous such well-known brands as Audi, Victoria's Secret, Nissan, Nike, Rolex,and Pepsi. *See Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006); *V Secret Catalogue, Inc. v. Moseley*, 558 F. Supp. 2d 734 (W.D. Ky. 2008); *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 2007 WL 4938219 (C.D. Cal. Sept. 20, 2007); *Nike, Inc. v. Nikepal Int'l, Inc.*, 2007 WL 2782030 (E.D. Cal. Sept. 18, 2007); *Rolex Watch, U.S.A., Inc. v. Canner*, 645 F. Supp. 484 (S.D.Fla.1986); *Pepsico, Inc. v. # 1 Wholesale, LLC*, 2007 WL 2142294 (N.D.Ga. 2007). In the context of trade dress, "the iconic . . . classic Hershey's bar" design was found to be famous and distinctive. *Hershey Co. v. Art Van Furniture, Inc.*, 2008 WL 4724756 (E.D. Mich. Oct. 24, 2008).

All of these brands are instantly recognizable nationwide by the population in general. In contrast, "niche fame" is insufficient to obtain protection against trademark dilution. *Quicken Loans, Inc. v. Nationwide Biweekly Admin., Inc.*, 2014 WL 505576, at *5 (E.D. Mich. Feb. 7, 2014). The language "general consuming public," added to the § 1125(c)(2)(A) in 2006, "eliminates any possibility that niche fame . . . can justify a basis for finding a mark famous." *Id.*; *see also Mike Vaughn*, 2014 WL 1673827, at *9 ("There is no cause of action for trade dress dilution for products based on 'niche fame, *i.e.* fame limited to a particular channel of trade, segment of industry or service, or geographic region.'").

8

As such, the Sixth Circuit found that the design of a grease pump was not famous. *Groeneveld*, 730 F.3d at 519. Similarly, the well-known red-dripping wax seal on Maker's Mark whisky bottles was found not to be famous, notwithstanding the validity of the mark. *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F. Supp. 2d 671, 699–700 (W.D. Ky. 2010), *aff'd* 679 F.3d 410 (6th Cir. 2012).[1] Other examples of non-famous marks include the Texas Longhorns logo, MENSA, and Quicken Loans. *See id.* at 699; *Quicken Loans*, 2014 WL 505576, at *5.

Assuming *arguendo* that Leapers is famous within the firearms community, it is implausible that Leapers can support its conclusory assertion that Leapers' "marks have become distinctive and famous and are widely recognized by the general consuming public of the United States." (Compl. ¶ 24.) Leapers' recitation of the elements of a trade dress dilution cause of action are simply insufficient to survive the motion to dismiss.

### IV. CONCLUSION

IT IS ORDERED that the Joint Motion to Dismiss (Dkt. # 15) and the Amended Motion to Dismiss (Dkt. # 20) are GRANTED IN PART AND DENIED IN PART. They are GRANTED in that Count III of the complaint is DISMISSED WITH PREJUDICE. It is DENIED in all other respects,

---

[1] *Maker's Mark* was affirmed on other grounds, but "Maker's Mark [did] not appeal the district court's adverse ruling on its dilution claim," 679 F.3d at 419, which is fitting given that Maker's Mark is best undiluted.

**IT IS FURTHER ORDERED that the court will convert the motion hearing to a Status Conference on October 7, 2014 at 2:00pm.**

                      s/Robert H. Cleland
                      \ROBERT H. CLELAND
                      UNITED STATES DISTRICT JUDGE

Dated:  October 3, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 3, 2014, by electronic and/or ordinary mail.

                      s/Lisa Wagner
                      Case Manager and Deputy Clerk
                      (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\14-12290.LEAPERS.MotiontoDismiss.ml.RHC.wpd